**Nos. 23-10101**

IN THE UNITED STATES COURT
OF APPEALS FOR THE
ELEVENTH CIRCUIT

Robert L. Belair and Lori N. Belair,

Plaintiffs-Appellants,

*v.*

Holiday Inn Club Vacations Inc., f/k/a
Orange Lake Country Club, Inc.,

Defendant-Appellee.

On Appeal from the United States
District Court for the Middle District
of Florida

Hon. Wendy Berger

Case No. 6:21-cv-165

**Brief of Amici Curiae
Consumer Financial Protection Bureau
and Federal Trade Commission in
Support of Plaintiffs-Appellants and
Reversal**

| | |
|---|---|
| Anisha S. Dasgupta | Seth Frotman |
| *General Counsel* | *General Counsel* |
| Joel Marcus | Steven Y. Bressler |
| *Deputy General Counsel* | *Deputy General Counsel* |
| Imad D. Abyad | Kristin Bateman |
| *Attorney* | *Assistant General Counsel* |
| Federal Trade Commission | Justin M. Sandberg |

600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-3579 (Abyad)
iabyad@ftc.gov

*Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 450-8786 (Sandberg)
Justin.Sandberg@cfpb.gov

*Belair v. Holiday Inn Club Vacations Inc.*, No. 23-10101

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. Rule 26.1, counsel for *amici curiae* the

Consumer Financial Protection Bureau (CFPB) and the Federal Trade

Commission (FTC) certify that the following additional persons and entities

have an interest in the outcome of these appeals:

Abyad, Imad D., FTC

Bateman, Kristin, CFPB

Bedoya, Alvaro M., FTC

Bressler, Steven Y., CFPB

Consumer Financial Protection Bureau

Dahdouh, Thomas N., FTC

Dasgupta, Anisha, FTC

Delaney, Elizabeth A., FTC (former)

Estrada, Danielle, FTC

Federal Trade Commission

Frant, Nina, FTC

Frotman, Seth, CFPB

Henderson, Juliana Gruenwald, FTC

Khan, Lina M., FTC

Kopec, Janice, FTC

*Belair v. Holiday Inn Club Vacations Inc.*, No. 23-10101

Koulousias, Amanda, FTC

Laroia, Gaurav, FTC

Marcus-Kurn, Joel, FTC

Moriarty, Kevin, FTC

Phillips, Noah, FTC (former)

Richardson, Rashida, FTC

Rieke, Aaron, FTC

Sandberg, Justin M., CFPB

Schoshinski, Robert, FTC

Slaughter, Rebecca Kelly, FTC

Spector, Robin, FTC

White, Katherine, FTC

Wilson, Christine S., FTC

Zhao, Daniel, FTC

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
      CORPORATED DISCLOSURE STATEMENT ................................... C-1

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ........................................................ ii

INTEREST OF AMICI CURIAE ................................................. 1

STATEMENT ............................................................................ 3

    A. The Fair Credit Reporting Act ............................................... 3

    B. Factual and Procedural Background ................................... 7

SUMMARY OF ARGUMENT ................................................ 10

ARGUMENT ......................................................................... 11

Furnishers Are Required to Reasonably Investigate
Disputes, Even When the Disputed Inaccuracy Can Be
Characterized as "Legal" ...................................................... 11

    1. The FCRA Requires a Reasonable Investigation Under
      the Circumstances .................................................... 11

    2. Congress Did Not Exclude Disputes that Implicate
      Legal Questions ........................................................ 14

    3. An Atextual Exception for Legal Inaccuracies Will
      Create a Loophole that Could Swallow the Reasonable
      Investigation Rule ................................................... 21

CONCLUSION ...................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Alston v. Wells Fargo Bank, N.A.*,
    No. 8:12-cv-03671-AW, 2013 WL 990416 (D. Md. Mar. 12, 2013)...........13

*Belair v. Holiday Inn Club Vacations Inc.*,
    No. 6:21-CV-165-WWB-DCI, 2022 WL 18284974 (M.D. Fla. Dec. 12,
    2022) .............................................................7, 9, 10

*Carvalho v. Equifax Info. Servs., LLC*,
    629 F.3d 876 (9th Cir. 2010) ......................................17

*Chiang v. Verizon New Eng. Inc.*,
    595 F.3d 26 (1st Cir. 2010) ................................ 19, 21

*Chuluunbat v. Experian Info. Sols., Inc.*,
    4 F.4th 562 (7th Cir. 2021) ...................................... 22

*Cornock v. Trans Union LLC*,
    638 F. Supp. 2d 158 (D.N.H. 2009) ....................................21, 22

*Denan v. Trans Union LLC*,
    959 F.3d 290 (7th Cir. 2020).................................... 20

*Dennis v. BEH-1, LLC*,
    520 F.3d 1066 (9th Cir. 2008) .............................. 23

*Doss v. Great Lakes Educ. Loan Servs., Inc.*,
    No. 3:20-cv-45, 2021 WL 1206800 (E.D. Va. Mar. 30, 2021) .................13

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009)................................... 4, 12, 13, 18

*Gross v. CitiMortgage, Inc.*,
    33 F.4th 1246 (9th Cir. 2022)........................................ *passim*

*Hinkle v. Midland Credit Mgmt., Inc*,
    827 F.3d 1295 (11th Cir. 2016)...................................... 12, 13, 14

*Hopkins v. I.C. Sys.*,
    No. 18-cv-2063, 2020 WL 2557134 (E.D. Pa. May 20, 2020) ................. 24

ii

*Humphrey v. Trans Union LLC*,
   759 F. App'x 484 (7th Cir. 2019) ............................................................ 18

*Hunt v. JPMorgan Chase Bank, N.A.*,
   770 F. App'x 452 (11th Cir. 2019) ........................................................9, 21

*Johnson Enter. of Jacksonville, Inc. v. FPL Grp., Inc.*,
   162 F.3d 1290 (11th Cir. 1998) ................................................................15

*Johnson v. MBNA Am. Bank, N.A.*,
   357 F.3d 426 (4th Cir. 2004) ...................................................................13

*Kemp v. United States*,
   142 S. Ct. 1856 (2022) .............................................................................14

*Losch v. Nationstar Mortg. LLC*,
   995 F.3d 937 (11th Cir. 2021) ................................................ 10, 17, 19, 24

*Mader v. Experian Info. Sols., Inc.*,
   56 F.4th 264 (2d Cir. 2023) ............................................................... 23, 24

*Markosyan v. Hunter Warfield, Inc.*,
   No. 17-cv-5400, 2018 WL 2718089 (C.D. Cal. May 11, 2018) ..................17

*Mayer v. Holiday Inn Club Vacations Inc.*,
   No. 6:20-cv-2283-GAP-EJK (M.D. Fla. April 21, 2022) ..........................19

*Milgram v. JPMorgan Chase Bank, N.A.*,
   No. 22-10250 (11th Cir. *appeal docketed* Jan. 19, 2022) ..........................16

*Nelson v. Ocwen Loan Servicing, LLC*,
   No. 3:14-cv-00419-HZ, 2014 WL 2866841 (D. Or. June 23, 2014) ......... 23

*Sessa v. Linear Motors, LLC*,
   576 F. Supp. 3d 1 (S.D.N.Y. 2021) ..................................................... 22, 23

*Solus v. Regions Bank*,
   No. 1:19-CV-2650-CC-JKL, 2020 WL 4048062 (N.D. Ga. July 17,
   2020) .......................................................................................................16

*Typpi v. PNC Bank, Nat'l Ass'n*,
   No. 13-CV-3930, 2014 WL 296035 (N.D. Ill. Jan. 27, 2014) ...................13

## Statutes

15 U.S.C. § 45(a) ...................................................................................1

15 U.S.C. § 1681 ....................................................................................1

15 U.S.C. § 1681a(d) ........................................................................... 3

15 U.S.C. § 1681g(a) ........................................................................... 3

15 U.S.C. § 1681i .................................................................................17

15 U.S.C. § 1681i(a) ......................................................................4, 12

15 U.S.C. § 1681i(a)(1)(A) ...........................................................5, 6, 14

15 U.S.C. § 1681i(a)(2) ..............................................................4, 5, 14

15 U.S.C. § 1681i(a)(5)(A) ..........................................................6, 14

15 U.S.C. § 1681i(a)(6) ...................................................................... 6

15 U.S.C. § 1681i(b)-(c) ..................................................................... 6

15 U.S.C. § 1681n ............................................................................... 6

15 U.S.C. § 1681o ............................................................................... 6

15 U.S.C. § 1681s(a) .............................................................................1

15 U.S.C. § 1681s(a)-(c) .......................................................................1

15 U.S.C. § 1681s(e) .............................................................................1

15 U.S.C. § 1681s-2(a)(8) ............................................................... 2, 4

15 U.S.C. § 1681s-2(b) ................................................................ *passim*

15 U.S.C. § 1681s-2(b)(1) ............................................................ *passim*

15 U.S.C. § 1681s-2(b)(1)(A) ...................................................... 2, 11

15 U.S.C. § 1681s-2(b)(1)(A)-(E) ................................................... 6

15 U.S.C. § 1681s-2(c)(1) .................................................................. 2

## Rules

Federal Rule of Civil Procedure 60(b)(1) ......................................14

## Regulations

12 C.F.R. § 1022.41(a), (a)(1).......................................................... 20

12 C.F.R. § 1022.42(a) ................................................................... 20

12 C.F.R. § 1022.43(a), (a)(1) .........................................................15

## Other Authorities

Brief of Amici Curiae, *Sessa v. Linear Motors, LLC*,
   No. 22-87 (2d Cir. May 5, 2022) ..............................................17

Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer
   Reporting Complaints (Jan. 2023),
   https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-
   e_report_2023-01.pdf ............................................................. 6

Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S.
   Credit Reporting System (2012), https://files.consumerfinance.gov
   /f/201212_cfpb_credit-reporting-white-paper.pdf................................. 3

Fed. Trade. Comm'n, 40 Years of Experience with the Fair Credit Reporting
   Act: An FTC Staff Report with Summary of Interpretations (2011),
   https://www.ftc.gov/sites/default/files/documents/reports/40-years-
   experience-fair-credit-reporting-act-ftc-staff-report-summary-
   interpretations/110720fcrareport.pdf....................................... 3

Holiday Inn Club Vacations, Our Purpose, hicv.com ................................... 7

Holiday Inn Club Vacations, Our Team and Our Values,
   https://hicv.com/our-team ....................................................... 7

S. Rep. No. 91-517 (1969) ............................................................ 4

v

## INTEREST OF AMICI CURIAE

To ensure fair and accurate credit reporting, the Fair Credit Reporting Act (FCRA or the Act), 15 U.S.C. § 1681 *et seq*., requires consumer reporting agencies (CRAs)—like Experian Information Solutions, Inc. (Experian), TransUnion, and Equifax—and entities that furnish information to CRAs (furnishers)—often, but not always, creditors—to follow various requirements when they compile and disseminate personal information about individuals. The Consumer Financial Protection Bureau (CFPB or Bureau) has exclusive rule-writing authority for most provisions of the FCRA. 15 U.S.C. § 1681s(e). The Bureau interprets and, along with various other federal and state regulators, enforces the Act's requirements. *Id*. § 1681s(a)–(c).

The Federal Trade Commission (FTC or Commission) has been charged by Congress with the mission to protect consumers from deceptive or unfair trade practices. 15 U.S.C. § 45(a). As part of that mission, the Commission has long played a key role in the implementation, enforcement, and interpretation of the FCRA. The FTC enforces the FCRA through Section 5 of the FTC Act. Congress deemed a violation of the FCRA to "constitute an unfair or deceptive act or practice in commerce, in violation of section 5(a) of the [FTC Act]." 15 U.S.C. § 1681s(a). And the

FCRA grants the Commission "such procedural, investigative, and enforcement powers . . . as though the applicable terms and conditions of the Federal Trade Commission Act were part of [the FCRA]." *Id.*

The FCRA requires a furnisher who is notified by a CRA of a dispute about information it furnished to the CRA (i.e., an indirect dispute)[1] to "conduct an investigation with respect to the disputed information." *Id.* § 1681s-2(b)(1)(A). This case presents a question about the scope of a furnisher's duty to investigate an indirect dispute.

The district court decision unduly narrows the scope of a furnisher's obligations by holding that furnishers categorically need not investigate indirect disputes involving "legal" inaccuracies. This decision runs counter to the purpose of the FCRA to require a reasonable investigation of consumer disputes and would limit consumers' ability to obtain correction of potentially harmful inaccuracies on their consumer reports. This outcome could reduce the incentive of furnishers to resolve "legal" disputes, and, in turn, could increase the volume of consumer complaints about

---

[1] An "indirect dispute" is one where the consumer files a dispute with the CRA, and the CRA, in turn, notifies the furnisher of it. In contrast, a "direct dispute," addressed by a different provision of the FCRA, 15 U.S.C. § 1681s-2(a)(8), is one that the consumer files directly with the furnisher. The FCRA does not provide a private right of action to consumers for violations of furnishers' obligation to investigate direct disputes. *Id.* § 1681s-2(c)(1).

2

credit reporting issues that the Bureau receives and devotes resources to address. It could also limit the ability of the Bureau and the FTC to exercise their authorities to protect consumers. The Bureau and the FTC, therefore, have a substantial interest in these issues.

## STATEMENT

### A.  The Fair Credit Reporting Act

1. Information contained in consumer reports has critical effects on Americans' daily lives. Consumer reports are used to evaluate consumers' eligibility for loans and determine the interest rates they pay, ascertain their eligibility for insurance and set the premiums they pay, and assess their eligibility for rental housing and for checking accounts. Prospective employers also commonly use consumer reports in their hiring decisions. *See generally* Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System (2012), https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.[2]

---

[2] The FCRA generally uses the term "consumer report," *see e.g.*, 15 U.S.C. § 1681a(d) (defining "consumer report"), rather than the more common term "credit report." Additionally, when consumers request their own information, the FCRA refers to that as a "disclosure" of information in the consumer's "file." *See id.* § 1681g(a).

Given the importance of this information, Congress enacted the FCRA to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517, at 1 (1969).

2. Since its enactment in 1970, the FCRA has governed the practices of CRAs that collect and compile consumer information into consumer reports for use by credit grantors, insurance companies, employers, landlords, and other entities that make eligibility decisions affecting consumers. To further ensure that consumer reports are accurate, in 1996, Congress amended the FCRA to also impose "duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). These duties include requiring furnishers to investigate when consumers dispute information that the furnisher has given to a CRA. Under the Act, furnishers have an obligation to investigate potential inaccuracies in two circumstances: (i) when a consumer submits an "indirect" dispute to a CRA, which must forward the dispute to the furnisher under 15 U.S.C. § 1681i(a); and (ii) when a consumer submits a dispute directly to the furnisher, *see id.* § 1681s-2(a)(8) and (b).

The Act requires a furnisher, after it receives notice of an "indirect" dispute from a CRA pursuant to § 1681i(a)(2), to:

(A)   [C]onduct an investigation with respect to the disputed information;

(B)   [R]eview all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C)   [R]eport the results of the investigation to the consumer reporting agency;

(D)   [I]f the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E)   [I]f an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under [§ 1681s-2(b)(1)], for purposes of reporting to a consumer reporting agency only, as appropriate, based on the result of the reinvestigation promptly –

    (i)     [M]odify that item of information;

    (ii)    [D]elete that item of information; or

    (iii)   [P]ermanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

These responsibilities are part of the FCRA's overall framework for ensuring accuracy in credit reports. As is relevant here, when a consumer notifies a CRA that he or she disputes "the completeness or accuracy of any item . . . contained in a consumer's file," the CRA is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Id.* § 1681i(a)(1)(A). The CRA must also provide notice to the furnisher, *id.* § 1681i(a)(2), after which the furnisher is required to engage

in the activities listed above. *Id*. § 1681s-2(b)(1)(A)-(E).[3] A consumer may sue a furnisher for willful or negligent noncompliance with its obligation to perform an investigation under § 1681s-2(b). *Id*. §§ 1681n, 1681o.

3. Despite Congress's repeated efforts to promote accuracy, errors persist in consumer reports. Between October 2021 and September 2022, the Bureau received nearly 1,000,000 complaints about credit or consumer reporting, and the most common issue consumers identified was incorrect information on a credit report. Consumer Fin. Prot. Bureau, Annual Report of Credit and Consumer Reporting Complaints (Jan. 2023), at 11, 13 https://files.consumerfinance.gov/f/documents/cfpb_fcra-611-e_report_2023-01.pdf.

---

[3] Within 30 days of receiving notice of the dispute, the CRA must record the status of the disputed information or modify or delete the disputed information, as appropriate, and promptly notify the furnisher that the information has been modified or deleted. 15 U.S.C. § 1681i(a)(1)(A), (a)(5)(A). After completing a reinvestigation, the CRA must notify the consumer of the results within five business days. *Id*. § 1681i(a)(6). If the CRA reinvestigation does not resolve the dispute, the consumer has the right to add a brief statement about the dispute that will appear or be summarized in all subsequent consumer reports from the CRA that contain the information. *Id*. § 1681i(b)-(c).

### B.  Factual and Procedural Background[4]

Robert and Lori Belair entered into a timeshare agreement with Defendant-Appellee, Holiday Inn Club Vacations Incorporated (HICV).[5] The Belairs made payments between August 2017 and March 2019, but then stopped.

Prior to discontinuing their payments, the Belairs hired a lawyer who sent letters to HICV, in February 2018 and April 2019, challenging the validity of, and attempting to rescind, the timeshare agreement. HICV did not agree to the rescission and recorded the deed in the Belairs' names in July 2019.

The Belairs subsequently obtained copies of their credit reports from Experian, which stated that each had a past-due balance with HICV. Between December 2019 and June 2020, each of the Belairs submitted letters to Experian disputing the credit reporting. Experian communicated

---

[4] The facts are drawn from the description in the district court's opinion. 1). *See Belair v. Holiday Inn Club Vacations Inc.*, No. 6:21-CV-165-WWB-DCI, 2022 WL 18284974, at *1 (M.D. Fla. Dec. 12, 2022). The procedural background is drawn from the district court's docket and documents included in it.

[5] HICV is a for-profit "resort, real estate and travel company." *See* Holiday Inn Club Vacations, Our Purpose, hicv.com. In 2017, HICV was named one of the fastest growing private companies in Central Florida by the Orlando Business Journal. *See* Holiday Inn Club Vacations, Our Team and Our Values, https://hicv.com/our-team.

some or all of the disputes to HICV. HICV certified that the information for each of the Belair's accounts was accurate, and Experian communicated these responses to the Belairs.

In January 2021, the Belairs filed suit against HICV and Experian in the Middle District of Florida; they have since settled with Experian. The Bellairs alleged, among other things, that HICV—the furnisher, in the parlance of the FCRA—violated the FCRA, 15 U.S.C. § 1681s-2(b), by failing to conduct a proper investigation.

HICV filed a motion for summary judgment, arguing, in relevant part, that such an FCRA claim can be based only on a factual inaccuracy rather than a legal error and that, in any case, there was no legal error—because the Belairs owed the money as a matter of law. Plaintiffs opposed the motion on a number of grounds, including that the alleged debt is premised on a misunderstanding of the purchase agreement: Plaintiffs argued that the purchase agreement contains a liquidated-damages clause, which allowed HICV to retain money already paid, but which also freed both parties of any continuing obligations. HICV asserts that the liquidated-damages clause frees the Belairs only from their obligations under the purchase agreement, but not a related promissory note.

8

The district court granted HICV's summary judgment motion. *Belair*, 2022 WL 18284974, at *1. With respect to the investigation claim (under § 1681s-2(b)), the court held that "'a plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).'" *Belair*, 2022 WL 18284974, at *3 (quoting *Hunt v. JPMorgan Chase Bank, N.A.*, 770 F. App'x 452, 458 (11th Cir. 2019)) (cleaned up). In doing so, the court declined to follow "out-of-circuit authority and two amicus briefs" filed by the Bureau. *Belair*, 2022 WL 18284974, at *3. And, the court concluded, as the Belairs' dispute centers on the legal validity of their debt, rather than a factual inaccuracy, the investigation requirement was not triggered, and the claim was "not actionable under the FCRA." *Id.* at 9; *see also id.* at *4. The court did not reach the question of whether HICV's investigations of the Belairs' indirect

9

disputes were reasonable. It entered judgment in favor of HICV on the

FCRA claim.[6]

Appellants noticed this appeal on January 11, 2023.

## SUMMARY OF ARGUMENT

The Fair Credit Reporting Act requires furnishers of information to

consumer reporting agencies to reasonably investigate disputes regarding

the completeness or accuracy of the information furnished. Although the

statute does not distinguish between legal and factual disputes, the district

court decision concludes that a furnisher's failure to investigate a dispute

alleging that the information is inaccurate for a legal reason (as opposed to

a factual one) cannot form the basis for a claim that a furnisher has violated

---

[6] The district court also considered whether, under the Eleventh Circuit's decision in *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021), the dispute here might not qualify as "true legal dispute" given that some courts had rejected HICV's interpretation of the contract provision at issue in cases with substantively similar contracts. *Belair*, 2022 WL 18284974, at *4. *Losch* holds that where a court has clearly resolved a legal dispute, reporting information inconsistent with the resolution can constitute a "factual inaccuracy" that would support an FCRA claim against a CRA.  995 F.3d at 946-47. The court concluded that *Losch* is distinguishable because there has "been no formal resolution as to the validity of the underlying debt in this case."  *Belair*, 2022 WL 18284974, at *4. There are "conflicting orders" from courts on the relevant contract provision—which means that "whether Plaintiff owes the [d]ebt remains a disputed legal issue." *Id*. The court further expressed doubt that "a court determination in a case involving a different debt and a different plaintiff could resolve a legal dispute in a separate case."  *Id*.

§ 1681s-2(b). The opinion is not supported by the statute, risks exposing

consumers to more inaccurate credit reporting, conflicts with the decision

of another circuit, and undercuts the remedial purpose of the FCRA.

Moreover, separating "factual" disputes from "legal" ones is difficult to

accomplish in practice and would allow furnishers to evade their statutory

obligations by characterizing nearly any dispute as a "legal" one. This Court

should reverse the district court's judgment and clarify that furnishers are

required to, and can be held liable for failing to, conduct reasonable

investigations of both legal and factual questions posed in consumer

disputes.

## ARGUMENT

### Furnishers Are Required to Reasonably Investigate Disputes, Even When the Disputed Inaccuracy Can Be Characterized as "Legal"

#### 1. The FCRA Requires a Reasonable Investigation Under the Circumstances

Under the FCRA, a furnisher who receives notice of a dispute about

the completeness or accuracy of information it provided to a CRA is

required to "conduct an investigation with respect to the disputed

information." 15 U.S.C. § 1681s-2(b)(1)(A). While the FCRA does not

explicitly specify the nature and extent of the "investigation" a furnisher

must conduct under 1681s-2(b), this Court has determined that

"'reasonableness' is an appropriate touchstone for evaluating investigations under § 1681s-2(b)."[7] *Hinkle v. Midland Credit Mgmt., Inc.,* 827 F.3d 1295, 1301-02 (11th Cir. 2016). Requiring a reasonable investigation, rather than a "cursory or sloppy review of the dispute," comports with the FCRA's goal to "'protect consumers from the transmission of inaccurate information about them.'" *Gorman*, 584 F.3d at 1155, 1157.

What constitutes a "reasonable" investigation is case specific, and the investigation must be "reasonable under the circumstances. It may be either simple or complex, depending on the nature of the dispute." Fed. Trade. Comm'n, 40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations (2011), at 96, https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf. A merely "superficial" inquiry will not suffice; a reasonable investigation "requires some degree of careful

---

[7] The Court reached this conclusion because the FCRA's structure "suggests that the duty of a furnisher under § 1681s-2(b) is a component of the larger reinvestigation duty imposed by § 1681i(a) on CRAs themselves." *Hinkle,* 827 F.3d at 1301. Since Section 1681i(a) imposes on CRAs "a duty . . . to make *reasonable* efforts to investigate and correct inaccurate or incomplete information brought to [their] attention by [a] consumer," *id.* at 1302 (emphasis added), furnisher investigations should likewise be evaluated under a reasonableness standard. *Id.*

inquiry." *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 (4th Cir. 2004); *Hinkle*, 827 F.3d at 1303. It must contain a "qualitative component," *Johnson*, 357 F.3d at 430, and courts reject furnishers' assertions that they satsify their obligation to investigate simply by going through the motions of conducting an investigation. *See, e.g.*, *Alston v. Wells Fargo Bank, N.A.*, No. 8:12-cv-03671-AW, 2013 WL 990416, at *5 (D. Md. Mar. 12, 2013).

While an investigation "is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer," *Gorman,* 584 F.3d at 1161, a furnisher's continuing to erroneously report information after a consumer files a dispute about the accuracy of that information may be evidence of the unreasonableness of a furnisher's investigation in certain circumstances. *See, e.g.*, *Doss v. Great Lakes Educ. Loan Servs., Inc.*, No. 3:20-cv-45, 2021 WL 1206800, at *9 (E.D. Va. Mar. 30, 2021).[8] When a furnisher ends its investigation by reporting that the disputed information has been verified as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle*, 827 F.3d at 1303. In other words, the reasonableness of the investigation

---

[8] *See also Typpi v. PNC Bank, Nat'l Ass'n*, No. 13-CV-3930, 2014 WL 296035, at *9 (N.D. Ill. Jan. 27, 2014).

can be evaluated by how thoroughly the furnisher investigated the dispute
(e.g., how well its conclusion is supported by the information it considered
or reasonably could have considered).

### 2. Congress Did Not Exclude Disputes that Implicate Legal Questions

The FCRA specifically describes the types of indirect disputes that
furnishers need to investigate—those that dispute "the completeness or
accuracy of any item of information contained in a consumer's file."[9] 15
U.S.C. §§ 1681i(a)(1)(A), (a)(2), 1681s-2(b)(1). Nothing in the term
"accuracy" suggests that Congress intended to exclude information that is
inaccurate on account of legal issues. *Cf. Kemp v. United States*, 142 S. Ct.
1856, 1862 (2022) (holding that the word "mistake" in Federal Rule of Civil
Procedure 60(b)(1) encompasses both mistakes of fact and of law, because
had the drafters "intended a narrower meaning, they 'easily could have
drafted language to that effect'. . . The difference between 'mistake of fact'
and 'mistake of law' was well known at the time. . . . Yet they chose to
include 'mistake' unqualified."). To the contrary, the accuracy and
completeness of information in consumer files often turns on legal issues,

---

[9] Notably, under the FCRA, a CRA is required to delete an item if it
cannot be verified. 15 U.S.C. § 1681i(a)(5)(A); *Hinkle,* 827 F.3d at 1304.

such as whether a debt is valid and who is obligated to pay it.[10] Many
inaccuracies in consumer reports could be characterized as legal, which
would create an exception that would swallow the rule. Consumer reports
generally include information about an individual's debt obligations, and
debts are generally creatures of contract. Thus, many inaccurate
representations pertaining to an individual's debt obligations arguably
could be characterized as legal inaccuracies, given that determining the
truth or falsity of the representation could require the reading of a contract.
*Cf. Johnson Enter. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290,
1329 (11th Cir. 1998) (explaining that "contract interpretation is a question
of law").

    This Court should join its sister circuit in following the text of the
statute and holding that the FCRA does not categorically exempt disputes
raising legal issues from the investigations that the FCRA requires of
furnishers under § 1681s-2(b)(1). *Gross v. CitiMortgage, Inc.*, 33 F.4th

---

[10] Although the Bureau has not issued regulations addressing indirect
furnisher disputes, it has issued regulations implementing the requirement
for furnishers to conduct investigations of direct disputes concerning
accuracy, and the Court may look to those regulations for guidance. They
specifically require that "a furnisher must conduct a reasonable
investigation of a direct dispute if it relates to [] [t]he consumer's liability
for a credit account or other debt with the furnisher," 12 C.F.R.
§ 1022.43(a), (a)(1), which clearly involves a legal question.

1246 (9th Cir. 2022).[11] As the Ninth Circuit held in *Gross*, "[t]he distinction between 'legal' and 'factual' issues is ambiguous, potentially unworkable, and could invite furnishers to evade their investigation obligation by construing the relevant dispute as a 'legal' one." *Gross*, 33 F.4th at 1253 (quotations omitted). Moreover, as the *Gross* court also recognized, the "FCRA will sometimes require furnishers [as part of their investigatory obligations] to investigate, and even to highlight or resolve, questions of legal significance." *Id.*

Prior to the Ninth Circuit's decision, some courts had drawn a distinction between factual and legal inaccuracies in the context of a *different* FCRA provision that does not apply to furnishers. *See, e.g.*, *Solus v. Regions Bank*, No. 1:19-CV-2650-CC-JKL, 2020 WL 4048062, at *4 (N.D. Ga. July 17, 2020) ("[R]easonable reinvestigation does not require CRAs to resolve legal disputes about the validity of the underlying debts

---

[11] In *Milgram v. JPMorgan Chase Bank, N.A.*, No. 22-10250 (11th Cir.) (appeal docketed Jan. 19, 2022), and two cases consolidated for appeal *Holden v. HICV*, No. 22-11014 (11th Cir.) (appeal docketed March 30, 2022) and *Mayer v. HICV*, No. 22-11734 (11th Cir.) (appeal docketed May 23, 2022), this Court is also reviewing district court decisions holding that furnishers' obligations to conduct reasonable investigations of consumer disputes do not extend to assessing the merits of legal questions. The Bureau filed an amicus brief in *Milgram* in April 2022, and the Bureau and FTC filed an amicus brief in *Holden/Mayer* in December 2022.

they report."); *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892 (9th Cir. 2010) ("A CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits.").[12] That provision, 15 U.S.C. § 1681i, requires *CRAs* to conduct "a reasonable reinvestigation" of disputes received from consumers regarding the accuracy or completeness of information in the consumer's file.

But even if it were proper to interpret § 1681i as excusing CRAs from investigating legal disputes—it is not,[13] but the Court need not address that distinct question here—it would not follow that furnishers' investigatory obligations under a different provision, § 1681s-2(b)(1), are similarly limited. The Ninth Circuit recognized in *Gross* that decisions about *CRAs'* obligations under § 1681i should not control the scope of *furnishers'* investigatory obligations under § 1681s-2(b)(1). *See Gross*, 33 F.4th at 1253; *accord Markosyan v. Hunter Warfield, Inc.*, No. 17-cv-5400, 2018 WL 2718089, at *8 (C.D. Cal. May 11, 2018) ("[T]he rationale for excluding legal validity from the scope of a CRA's investigative duty does not extend to a

---

[12] Although this Court has cited *Carvalho* approvingly with respect to a CRA's obligations, *see Losch*, 995 F.3d at 946-47, ultimately this Court concluded in *Losch* that a CRA that "did nothing" in response to a consumer's dispute could be found to have violated the FCRA, even though it is not required to *resolve* legal disputes. *See discussion infra*.

[13] See note 14 and 16 below.

furnisher."). The institutional competencies of CRAs and furnishers differ: CRAs "lack any direct relationships with the consumer . . . ." *Gross*, 33 F.4th at 1253 (internal quotations, alteration, and citation omitted). Furnishers, by contrast, generally have superior access to the relevant information regarding disputed debts. *See id.* Thus, furnishers' investigatory obligations "will often be more extensive."[14] *Id.*

Indeed, even the courts that have distinguished between factual and legal investigations by CRAs have recognized the institutional traits that differentiate CRAs from furnishers, i.e., that CRAs, which are not parties to the debt-generating transactions, are not as well positioned as furnishers to investigate legal disputes arising from those transactions. *See, e.g.*, *Humphrey v. Trans Union LLC*, 759 F. App'x 484, 488 (7th Cir. 2019) (concluding that furnisher "was in a better position than the CRAs to make this determination" regarding the validity of a loan); *see also Gorman*, 584 F.3d at 1156-57 (noting that CRAs "lack[] any direct relationship with the

---

[14] Even in the context of CRA reinvestigations, there is no support in the text of the FCRA for distinguishing between "factual" and "legal" inaccuracies, and drawing such a distinction risks exposing consumers to more inaccurate credit reporting and undercutting the remedial purpose of the FCRA. *See* Brief for the Consumer Financial Protection Bureau and the Federal Trade Commission as Amici Curiae Supporting Plaintiff-Appellant at 9, *Sessa v. Linear Motors, LLC*, No. 22-87 (2d Cir. May 5, 2022).

consumer"). This Court similarly discussed the role and competency of CRAs in *Losch*, stating that a CRA's "'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher," and therefore concluding that CRAs are not required to "*resolve* legal disputes about the validity of the underlying debts they report." 995 F.3d at 946-47 (emphasis added). Even then, however, this Court held that CRAs are not excused from conducting at least some independent investigation of disputed information, including where the information could be described as involving a legal question. *Id.*

The cases that import a factual-legal distinction from CRA re-investigations into the context of furnishers' investigative responsibilities ignore that furnishers can, and do, routinely assess the legal enforceability of debt. The district court in *Mayer*, for example, cited *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38, 48 (1st Cir. 2010), which imported a factual-legal distinction from a case about CRAs into the context of furnisher investigations, and noted (without explanation) that "like CRAs, furnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *Mayer v. Holiday Inn Club Vacations Inc.*, No. 6:20-cv-2283-GAP-EJK (M.D. Fla. April 21, 2022), Order, ECF No. 59, at 6 n.3 (cleaned up). But furnishers *are*

19

qualified and obligated to assess issues such as whether debts are actually due and/or are collectible.[15] Indeed, furnishers routinely assess whether debts are due and collectible when (i) deciding whether and how much to collect on obligations and (ii) complying with their duties to accurately report credit information. A stark distinction between legal and factual disputes is therefore particularly inappropriate in the context of furnisher investigations. *Cf. Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020) (noting that "it makes sense" that furnishers would be "tasked with accurately reporting liability" under FCRA given that "they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt").

---

[15] For example, for purposes of various furnisher obligations, including the requirement that furnishers conduct investigations of direct disputes, accuracy is defined in the FCRA's implementing regulations to include that the information "correctly [r]eflects . . . liability for the account." 12 C.F.R. § 1022.41(a), (a)(1). To fulfill this obligation, furnishers must "establish and implement reasonable written policies" that are "appropriate to the nature, size, complexity, and scope of each furnisher's activities." 12 C.F.R. § 1022.42(a); *see also, e.g.*, *Gross*, 33 F.4th at 1253 (discussing "several factors that inform the reasonableness analysis, including: the furnisher's relationship to the debt and to the consumer; the level of detail in the credit reporting agency's notice of dispute; and the feasibility of implementing investigatory procedures, including training staff"). As noted above, the Court may look to those regulations for guidance with respect to indirect disputes. *See supra* n.10.

In the unpublished opinion in *Hunt*, this Court concluded that a furnisher's reasonable investigation obligation is triggered only by an alleged factual inaccuracy. *Hunt*, 770 F. App'x at 458. The Court offered no explanation for this conclusion, other than to cite *Chiang*, 595 F.3d at 35. But *Chiang* is unpersuasive because it does not properly account for the text of § 1681s-2(b)(1) or the fact that furnishers are qualified to, and regularly do, assess the legal validity of debts the furnishers hold, as explained above.

### 3. An Atextual Exception for Legal Inaccuracies Will Create a Loophole that Could Swallow the Reasonable Investigation Rule

This Court should also reject a formal distinction between factual and legal investigations because it will likely prove unworkable in practice. "[C]lassifying a dispute over a debt as 'factual' or 'legal' will usually prove a frustrating exercise." *Cornock v. Trans Union LLC*, 638 F. Supp. 2d 158, 163 (D.N.H. 2009). The same dispute could be characterized as either factual or legal—or both. For example, the Seventh Circuit recently considered a set of consolidated cases in which plaintiffs claimed that they did not owe certain debts to the creditors listed on their credit reports because the debts had purportedly been assigned to other companies. The Seventh Circuit noted that "[i]n each of these disputes . . . the facts present

21

a similar pattern." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 565 (7th Cir. 2021). Nonetheless, the district courts offered different reasoning and reached different conclusions in many of the cases: Some courts determined that whether the creditors owned the debts was a question of law; one decided that ownership of a debt was a mixed question of law and fact; and still other courts "eschewed a rigid distinction between law and fact and focused on the institutional competency of the [CRAs] to resolve the claims." *Id.* at 566. Likewise, another court noted that a plaintiff's dispute about a fraudulently opened credit card account "could be called 'factual' in the sense that . . . [plaintiff] did not sign the credit card application as a matter of fact; but it could also be called 'legal' in the sense that, as [the CRA] suggests, [plaintiff] claimed that he therefore had no liability as a matter of law while [the bank] claimed otherwise based on alleged payments to it out of an account he jointly held." *Cornock*, 638 F. Supp. 2d at 163.

The difficulty in distinguishing legal issues from factual ones could undermine the FCRA's important protections, as evidenced by a decision currently being appealed to the Second Circuit. In *Sessa v. Linear Motors, LLC*, a CRA erroneously reported that a consumer owed a large "balloon payment" at the end of her car lease, when in fact her car lease contained no

such payment obligation whatsoever. 576 F. Supp. 3d 1, 5 (S.D.N.Y. 2021), *appeal pending*, No. 22-87. The figure listed as a "balloon payment" on her credit report was simply a notation of the residual value of the car at lease-end, as the furnisher itself acknowledged. *Id.* Despite the reporting being clear error, the district court granted summary judgment to the CRA, finding that the plaintiff consumer's credit report did not contain a "factual inaccuracy" because, it reasoned, the incorrectly reported information implicated "a contractual dispute" (i.e., resolving the dispute required reading the plain terms of the contract). *Id.* at 13-14. But given that debts are generally creatures of contract, and thus almost any dispute about a debt might require a review of the contract terms, this case shows how easily a loophole for "legal" inaccuracies can be manipulated to swallow the rule.[16]

---

[16] As a result of the difficulty in cleanly distinguishing legal and factual issues, even in the context of CRA's obligations under FCRA, some courts have correctly rejected a formal legal/factual distinction. For example, "the Ninth Circuit has endorsed holding a CRA liable under the FCRA when it 'overlooks or misinterprets' . . . publicly available documents of *legal* significance." *Nelson v. Ocwen Loan Servicing, LLC,* No. 3:14-cv-00419-HZ, 2014 WL 2866841, at *5 (D. Or. June 23, 2014) (emphasis added) (relying on *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1068-70 (9th Cir. 2008)). Similarly, the Second Circuit, in the course of holding that "an unresolved legal question . . . render[ed] [a] claim non-cognizable under the FCRA," explained that "this holding does not mean that credit reporting agencies are never required by the FCRA to accurately report information

Given the difficulty in distinguishing "legal" from "factual" disputes, this Court should hold that there is no exemption in the FCRA's reasonable investigation requirement for legal questions. Such an exemption would curtail the reach of the FCRA's investigation requirement in a way that runs counter to the purpose of the provision to require meaningful investigation to ensure accuracy on credit reports. It would also result in an unworkable standard where mixed questions of fact and law are presented, and it would encourage the evasion of statutory obligations by allowing furnishers to characterize disputes as legal.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

---

derived from the readily verifiable and straightforward application of law to facts." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023). And even courts that maintain a more rigid factual-legal distinction have found that if a legal issue has already been adjudicated by another court or otherwise resolved, a dispute raising that issue should be considered factual, rather than legal. *See, e.g.*, *Losch,* 995 F.3d at 946-47; *Hopkins v. I.C. Sys.*, No. 18-cv-2063, 2020 WL 2557134, at *8 (E.D. Pa. May 20, 2020).

April 20, 2023

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*

/s/ *Justin M. Sandberg*
Justin M. Sandberg
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 450-8786 (Sandberg)
Justin.Sandberg@cfpb.gov

Anisha S. Dasgupta
  *General Counsel*
Joel Marcus
  *Deputy General Counsel*

/s/ *Imad Abyad*
Imad D. Abyad
  *Attorney*
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
(202) 326-3579 (Abyad)
iabyad@ftc.gov

25

## Certificate of Compliance

This brief complies with the length limits permitted by Federal Rule of Appellate Procedure 29(a)(5). The brief contains 5,389 words, excluding the portions exempted by Rule 32(f). The brief's typeface and type style comply with Rule 32(a)(5) and (6).

April 20, 2023                    /s/ *Justin M. Sandberg*
                                  Justin M. Sandberg
                                    *Senior Counsel*
                                  Consumer Financial Protection Bureau
                                  1700 G Street, NW
                                  Washington, D.C. 20552
                                  (202) 450-8786
                                  Justin.Sandberg@cfpb.gov

## Certificate of Service

I hereby certify that on April 20, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

April 20, 2023                    /s / *Justin M. Sandberg*
                                  Justin M. Sandberg
                                     *Senior Counsel*
                                  Consumer Financial Protection Bureau
                                  1700 G Street, NW
                                  Washington, D.C. 20552
                                  (202) 450-8786
                                  Justin.Sandberg@cfpb.gov