No.: 23-10101

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

LORI AND ROBERT BELAIR,
*Plaintiff–Appellants*,
v.
HOLIDAY INN CLUB VACATIONS INCORPORATED,
F/K/A ORANGE LAKE COUNTRY CLUB, INC.,
*Defendant–Appellee*,


_____


Appeal from the United States District Court
for the Middle District of Florida
Case No.: 6:21-cv-165-WWB-DCI (Hon. Wendy W. Berger)


**APPELLEE'S RESPONSE BRIEF**


ALLISON MORAT
BITMAN O'BRIEN & MORAT PLLC
615 Crescent Executive Ct., Suite 212
Lake Mary, Florida 32746
amorat@bitman-law.com
Telephone: (407) 815-3110
*Counsel for Appellee*
*Holiday Inn Club Vacations, Inc.*

**Certificate of Interested Persons and Corporate Disclosure Statement**

The Appellee, HOLIDAY INN CLUB VACATIONS INCORPORATED, F/K/A ORANGE LAKE COUNTRY CLUB, INC., by and through its undersigned counsel, hereby discloses the following:

1)      the name of each person, attorney, association of persons, firm, law firm, partnership, and corporation that has or may have an interest in the outcome of this action-including subsidiaries, conglomerates, affiliates, parent corporations, publicly-traded companies that own 10% or more of a party's stock, and all other identifiable legal entities related to *any* party in the case:

Belair, Lori

Belair, Robert

Berger, Wendy W.

Bitman O'Brien & Morat, PLLC

Holiday Inn Club Vacations Incorporated f/k/a/ Orange Lake County Club, Inc.

Morat, Allison

O'Brien, Christopher

Swift, Aaron

Swift Law PLLC

Pursuant to 11th Cir. R. 26.1-3(b), Appellee is not aware of any publicly traded company or corporation that has an interest in the outcome of this case or appeal.

/s/ Allison Morat
Allison Morat

**Statement Regarding Oral Argument**

Appellee, HOLIDAY INN CLUB VACATIONS INCORPORATED, F/K/A ORANGE LAKE COUNTRY CLUB, INC., believes that this appeal may be properly decided on the briefs and without the benefit of oral argument. However, to the extent the Court permits oral arguments, it requests the opportunity to be heard.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement .................. ii

Statement Regarding Oral Argument ...................................................... iv

Table of Contents ..........................................................................v

Table of Citations ...................................................................... vii

Preliminary Statement.....................................................................1

Statement of the Issues...................................................................1

Statement of the Case.....................................................................2

      i.     Course of Proceedings and Statement of Facts ....................................5

      ii.    Disposition in the Middle District.........................................8

      iii.   Scope of Review...........................................................10

Summary Of The Argument ................................................................11

Argument................................................................................13

      I.     The Belairs Failed to Allege a Cognizable Inaccuracy under the FCRA .................................................................13

          a.  The Fair Credit Reporting Act .....................................17

          b.  The Belairs Do Not Possess an Actionable Claim Under the FCRA .............................................................20

      II.    HICV Did Not Report Inaccurately; Any Reasonably Investigation Would Yield the Same Result .........................................25

      III.   The Court Should Reject the Consumer Financial Protection Bureau's and  Federal Trade Commission's Arguments....................................29

Conclusion ..................................................................................................34

Certificate Of Compliance ........................................................................35

Certificate Of Service ...............................................................................36

# Table of Citations

## Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................10

*Baldeosingh v. TransUnion, LLC*,
    No. 8:20-cv-925-WFJ-JSS, 2021 WL 1215001 (M.D. Fla. March 31, 2021) ...15

*Batterman v. BR Carroll Glenridge*, *LLC*,
    829 F. App'x 478 (11th Cir. 2020) ........................................... 13, 19, 21, 22, 31

*Beal v. Paramount Pictures Corp.*,
    20 F.3d 454 (11th Cir. 1994) ............................................................11

*Bueno v. U. of Miami*,
    22-22831-CIV, 2023 WL 3093614 (S.D. Fla. Apr. 26, 2023), *reconsideration denied,* 22-22831-CIV, 2023 WL 5037785 (S.D. Fla. Aug. 8, 2023)...............19

*Cahlin v. General Motors Acceptance Corp.*,
    936 F. 2d 1151 (11th Cir. 1991) ........................................................ 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..........................................................................11

*Chiang v. Verizon New Eng. Inc.*,
    595 F.3d 26 (1st Cir. 2010)......................................... 8, 13, 16, 21, 31

*Davidson v. Capital One*, N.A.,
    No. 14-20478-CIV, 2014 WL 6682532 (S.D. Fla. Nov. 25, 2014)...................25

*Denan v. Trans Union LLC*,
    959 F.3d 290 (7th Cir. 2020) ............................................................21

*Erickson v. First Advantage Background Services Corp.*,
    981 F.3d 1246 (11th Cir. 2020) .........................................................19

*Evers v. Gen. Motors Corp.*,
    770 F.2d 984 (11th Cir. 1985) ...........................................................11

*Felts v. Wells Fargo Bank, N.A.*,
    893 F.3d 1305 (11th Cir. 2018) ................................................................ passim

*Fryer v. Morgan*,
    714 So. 2d 542 (Fla. 3d DCA 1998) .................................................................28

*Gross v. CitiMortgage, Inc.*,
    33 F.4th 1246 (9th Cir. 2022) ...................................................................... 16, 32

*Hinkle v. Midland Credit Mgmt., Inc.*,
    827 F.3d 1295 (11th Cir. 2016) .....................................................................9, 18

*Holden v. Holiday Inn Club Vacations Inc.*,
    No. 6:19-cv-2373-CEM-EJK, 2022 WL 993572 (M.D. Fla. Feb. 28, 2022) .......9

*Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*,
    770 F. App'x 452 (11th Cir. 2019) ............................................................ passim

*Jackson v. Bank of Am., N.A.*,
    No. 2:19-cv-01940-RDP, 2022 WL 1493849 (N.D. Ala. May 11, 2022) ..........15

*Kahalani v. Experian Info. Sols., Inc.*,
    No. 20-81018-CV, 2020 WL 13388260 (S.D. Fla. Dec. 29, 2020) ..................15

*Losch v. Nationstar Mortg. LLC*,
    995 F.3d 937 (11th Cir. 2021) ............................................................. 7, 16, 31

*Mader v. Experian Info. Sols., Inc.*,
    56 F.4th 264 (2d Cir. 2023) ....................................................... 16, 21, 23, 31

*Milgram v. Chase Bank USA, N.A.*,
    72 F.4th 1212 (11th Cir. 2023) ................................................. 13, 17, 19, 20, 23

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) .................................................................................. 17, 30

*Santessi v. Experian Info. Sols., Inc.*,
    No. 20-22689-CIV, 2020 WL 13401919 (S.D. Fla. Oct. 26, 2020) ..................15

*Sessa v. Trans Union, , LLC*,
    74 F.4th 38 (2d Cir. 2023) ..................................................................... 16, 21, 32

*Welch v. JG Worldwide, LLC*,
    CV 19-8- BU-BMM-JCL, 2019 WL 2807449 (D. Mont. June 7, 2019), report
    and recommendation adopted, CV-19-8- BU-BMM, 2019 WL 2775498 (D.
    Mont. July 2, 2019)..................................................................................................26

*Williams v. Scores Enetrtainment, Inc.*,
    96 CIV. 1283 (SAS), 1996 WL 601528 (S.D.N.Y. 1996) ...............................26

*Wilson v. SunTrust Bank, Inc.*,
    533 F. Supp. 3d 1363 (S.D. Ga. 2021) .............................................................15

## Statutes

15 U.S.C. 1681s-2 ............................................................................ passim

## Rules

11th Circuit R. 28-1 ...............................................................................2, 4

Fed. R. App. P. 28(a) .............................................................................2, 4

Fed. R. App. P. 32(a) ..............................................................................35

**Preliminary Statement**

In this brief, the Appellee, HOLIDAY INN CLUB VACACATIONS INCORPOATED, F/K/A ORANGE LAKE COUNTRY CLUB, INC. is referred to as "HICV." The Appellants, LORI and ROBERT BELAIR, are referred to as the "Belairs."

References to "DE ___" are to the district court docket in Case No. 6:21-cv-165. Page numbers refer to the page number that appears on the header of the docket entry as generated by the district court's electronic filing system.

**Statement of the Issues**

1.    Did the district court correctly conclude that disputed legal questions are not actionable under the FCRA where the questions are within the purview of the court and have not been resolved by a court of law?

2.    Did the court possess an alternative basis to grant summary judgment where there was no inaccuracy in reporting and no reasonable investigation would have yielded a different result?

## Statement of the Case

The Belairs' "Introduction" and Statement of the Case fails to comply with Fed. R. App. P. 28(a) and 11th Circuit R. 28-1(i). The contents of the brief do not follow the order dictated by the Rules. Instead, the Belairs begin the brief with an "Introduction," that inaccurately represents, among other things, that (i) they terminated their timeshare contracts, and (ii) the district court applied a per se bar against FCRA claims that arise from a legal inaccuracy. (Opening Brief, p. 2). Their statement of the case is conflated and inaccurate.

First, it is inaccurate for the Belairs to represent to this Court, and as a foregone conclusion, that they terminated their contracts. (*Id.*) (alleging, the court viewed the Belairs' claim as involving a legal dispute as to the debt owed "after they terminated their timeshare contract."). There has been no legal determination by a court of law that the Belairs terminated the timeshare contract, and HICV categorically disagrees that they terminated their payment obligations under the respective promissory notes. Second, the district court did not hold that "legal inaccuracies" may not give rise to an FCRA claim. Instead, the district court "decline[d] Plaintiffs' invitation to diverge from the numerous courts in this Circuit finding that a furnisher's duty under the FCRA to investigate does not apply to **legal disputes**." (DE 54, pp. 6-7) (emphasis added).

2

And, the district court cited relevant in-circuit decisions to support the notion that "generally, unresolved contract disputes constitute legal disputes and not factual inaccuracies. (*Id.* at p. 5). At the very outset of the opening brief, the Belairs erroneously conflate the term legal inaccuracy with a legal dispute. In doing so, their Introduction erroneously frames the issues before this Court in effort to change and unduly expand the application of the FCRA.

To be sure, the lower court did not draw a threshold distinction between factual inaccuracies and legal inaccuracies. It implicitly drew a distinction between an inaccuracy that is subject to the reasonable investigation requirement of section 1681s-2 and unresolved legal disputes that are within the purview of a court of law. (DE 54 pp. 5-9). Here, "there has been no formal resolution as to the validity of the underlying debt in this case. . . ." DE 54, p. 9).

Moreover, rather than beginning their Statement of the Case with a concise statement of the facts relative to this case and the procedural history, the Belairs portray HICV as a nefarious actor that engages in high-pressure sale practices that lock purchasers into unwanted timeshares for life, but they fail to cite to the record to support this contention. (Initial Brief, pp. 9-10) ("Timeshare companies like Holiday Inn Club rely on 'high-pressure sales practices' and customers who succumb to these practices are typically locked into the timeshare for life.").

In making statements like the foregoing, the Appellants improperly malign HICV's institutional reputation at the outset of the brief in an apparent effort to negatively sway the viewpoint of the Court. In this sense, the initial brief runs afoul of Fed. R. App. P. 28(a)(6). ((a) (Appellant's Brief. "The appellant's brief must contain, under appropriate headings and in the order indicated . . . . (6) a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record (see Rule 28(e))"). And, it deviates from 11th Cir. R. 28-1(i). ("In the statement of the case, as in all other sections of the brief, every assertion regarding matter in the record shall be supported by a reference to the record, as described in 11th Cir. R. 28-5 . . . A proper statement of facts reflects a high standard of professionalism. It must state the facts accurately, those favorable and those unfavorable to the party.").

It would have been more accurate and concise for the Belairs to inform the Court that it is undisputed that they signed a promissory note, it is undisputed that they made 19 monthly payments, and it is undisputed that they defaulted. (DE 37, p. 17, second full paragraph). After they defaulted, the Belairs filed an FCRA action under the false belief that the purchase agreement allowed them to escape the debt. However, the Belairs did not, at any point, obtain a declaratory judgment as to the validity of the debt. (DE 37, p. 13).

4

For these reasons, HICV does not agree with or acquiesce to the Appellants'

Statement of the Case. It provides its own Statement of the Case below.

### i.    Course of Proceedings and Statement of Facts

On July 11, 2017, the Belairs executed a purchase agreement for the purchase

of timeshare property.  (DE 54). On the same date, they obtained a loan to finance

the purchase of the timeshare.  (*Id.*). (*See also* DE 37, p. 2).

More specifically, on July 11, 2017, the Belairs executed and delivered a

promissory note payable to Wilson Resort Finance, LLC in the amount of

$16,359.00. (DE 32 at ¶ 5; 32-2, Ex. B). Per the terms of the note, the Belairs were

required to make payments monthly installments in the amount of $270.48. (*Id.*). To

secure their payment obligation, the Belairs executed a mortgage. (DE 32 at ¶ 6; 32-

3, Ex. C).

Because this was a financed transaction, the purchase agreement provided the

note, mortgage, and deed would held in escrow until the Belairs made the first twelve

scheduled installment payments under the note. (DE 32 at ¶ 7; Ex. A, at ¶ 7(b)). The

purchase agreement defines these first twelve loan payments as the "Note

Payments." (DE 32-1, p. 4,  ¶ 7(b)).

The twelfth payment was due on July 25, 2018. (DE 32-2, Ex. B). The Belairs

indisputably made the first twelve loan payments. (DE 32, ¶ 8, Ex. D).

Upon making the first twelve payments, all conditions for the release of the note, mortgage and deed from escrow had occurred.  (DE 32 at ¶ 8; 32-1, Ex. A, at ¶ 7(b)).

The Belairs defaulted under the note by failing to make the payment due March 25, 2019 and all subsequent payments.1 (DE 32 at ¶ 10; Ex. D). There is no dispute that they stopped making payments. After the Belairs stopped making their loan payments, HICV reported the delinquency to Experian Information Systems, Inc. ("Experian"). (*Id*. at ¶ 15).

On July 31, 2019, the deed to the Belairs was recorded as Document No. 2019068140 of the Official Records of Montgomery County, Texas. (DE 32 at ¶ 11; Ex. E).

After HICV reported the debt as delinquent, the Belairs disputed the accuracy of the delinquent reporting as to the account. (DE 32 at ¶ 13). HICV investigated the disputes but determined that there was no factual inaccuracy with respect to the reporting. (*Id.* at ¶ 15).

On March 15, 2021, the Belairs filed their amended complaint against HICV and Experian. (DE 14). Count III of the Belairs' amended complaint alleged that HICV violated 15 U.S.C. § 1681s-2(b) of the FCRA, allegedly because HICV should have removed any delinquent reporting of the account based upon the Belairs' allegation that they did not owe the debt. (*Id*.).

6

To support their claim that no debt was owed, the Belairs argued that HICV is limited to the liquidated damages provision of the purchase agreement. (DE 14, ¶ 48). HICV disagrees.

On October 11, 2021, HICV filed its answer and affirmative defenses to the complaint. (DE. 30). On April 06, 2022, HICV moved for summary judgment on Count III. (DE 37). In support, it argued that there is no factual dispute that the Belairs stopped making payments. (*Id.* at p. 2). Instead, this matter involves a legal dispute, *i.e.*, the Belairs believes that they do not owe the debt pursuant to the purchase agreement, and HICV disagrees. (*Id.* at p. 4). HICV argued that a legal dispute cannot serve as grounds for a violation of § 1681s-2(b) of the FCRA. (*Id.* at pp. 7-8). It cited, among other case law, an unpublished decision of this Court, and a published decision of the First Circuit that holds "[a] plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)." (*Id.* at p. 8) (citing *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) (quoting *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)).

HICV further contended that "[h]ad the Belairs obtained a final judgment invalidating the debt, then perhaps the rationale in *Losch* would apply. However, the Belairs have never obtained such a judgment or decree." (DE. 37, p. 13).

HICV also cited for the court at least six sate court cases that supported its position as to the validity of the note and mortgage provisions. (*Id.* at p. 14). HICV argued as a secondary basis for summary judgment that the liquidated damages clause in the purchase agreement did not excuse the Belairs from their payment obligation under the note. (*Id.* at p. 15).

### ii.   Disposition in the Middle District

On December 12, 2022, the Honorable Wendy W. Berger of the United States District Court for the Middle District of Florida granted HICV's motion for summary judgment. (DE 54). The court appropriately understood the undisputed facts as follows: "[h]ere, the parties have presented a contractual dispute: Plaintiffs assert that they properly rescinded the Sales Contract, thereby extinguishing any debt owed, while Defendant contends that no rescission occurred, and Plaintiffs remain obligated to make loan payments." (*Id.* at p. 5).

In deciding summary judgment, the court began its analysis with the language of the statute, explaining, "[t]he FCRA prohibits furnishers from "furnish[ing] any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe that the information is inaccurate" or "if the person has been notified by the consumer . . . that specific information is inaccurate [and] the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1)." (DE 54, p. 4).

The court recognized, "the only private right of action consumers have against furnishers is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute." (DE 54, p. 4) (quoting *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018) and citing 15 U.S.C. § 1681s-2(b), (c)(1)).

The district court further noted, "[r]easonableness is the touchstone for whether the furnisher conducted a sufficient investigation." (DE 54, p. 5) (quoting *Holden v. Holiday Inn Club Vacations Inc.*, No. 6:19-cv-2373-CEM-EJK, 2022 WL 993572, at *2 (M.D. Fla. Feb. 28, 2022) (citing *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016)).

Given the express language of the court's order, it is perplexing to say the least that the Belairs contend, within the Statement of the Case, that "[t]he court did not analyze the statute's text or structure, [or] address any other aspect of Plaintiff's section 1681s-2(b) claim[.]" (Opening Brief, p. 12). The court's analysis began with the statute. Ultimately, the district court held, "Plaintiffs' claim is based on a **legal dispute** that is not actionable under the FCRA . . . ." (*Id.* at p. 9) (emphasis supplied). Pointing to this Court's decision in *Hunt*, the district court reiterated that "[a] plaintiff must show a factual inaccuracy rather than the existence of **disputed legal questions** to bring suit against a furnisher under § 1681s-2(b).' *Hunt*, 770 F. App'x at 458 (citation omitted)." (DE 54, p. 6) (emphasis added).

9

In the Statement of the Case, the Belairs inaccurately represent that the court, in its analysis, rigidly "reasoned, inaccuracies related to 'legal disputes' are simply not actionable under the FCRA." (Opening Brief, p. 12). Instead of precluding inaccuracies related to legal disputes, the court plainly distinguished this case because there has not been a final resolution of the legal dispute that would create an inaccuracy in reporting. (DE 54, p. 8). A legal dispute is not the per se equivalent of an actionable inaccuracy.

### iii.    Scope of Review

This Court reviews "summary judgment rulings *de novo*, applying the same legal standards used by the district court." *Felts*, 893 F.3d at 1311.

Summary judgment is proper where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Additionally, "the moving party is 'entitled to a judgment as a matter of law' [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether summary judgment is appropriate, the court is not required to "accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

## Summary of the Argument

This appeal arises from an FCRA action predicated upon an unresolved legal dispute. Despite executing a note and mortgage to finance the purchase of a timeshare and making 19 payments, the Belairs stopped making their payments and attempted to rescind the transaction. HICV adamantly disagrees that the Belairs' payment obligation was terminated via the consumers' written letters.

An unresolved legal dispute such as this does not give rise to an actionable claim under 15 U.S.C. § 1681s-2(b). Nevertheless, HICV investigated the dispute, and determined that its reporting is accurate. The Court should affirm because:

(I)    This matter involves an unresolved legal dispute. The allegations do not amount to a cognizable inaccuracy of the FCRA. The Belairs failed to obtain a ruling from a court of law as to their debt obligation prior to prematurely bringing an FCRA lawsuit. This Circuit, and the courts therein, consistently hold within the language

11

and framework of the FCRA that disputed legal questions that are not objectively and readily verifiable as factually incorrect do not give rise to an inaccuracy in credit reporting that is actionable under § 1681s-2(b).

(II)    HICV did not report inaccurately. The Belairs did not effectively rescind their payment obligations. The operative agreement governing the owed debt is the promissory note, not the purchase agreement. The Belairs' payment default, after making 19 payments, did not relegate HICV to the liquidated damages clause in the purchase agreement. The Court may and should affirm on this additional basis.

(III)    The Consumer Financial Protection Bureau and Federal Trade Commission's arguments should be rejected. The Court should not greenlight <u>all</u> claims arising from legal disputes. To hold otherwise is to unduly expand the scope and purpose of the FCRA. The courts' inquiry should continue to be case specific. This the governing law is not unworkable. The courts are plainly capable of weeding out factual inaccuracies, disputed legal issues that should be resolved by a court of law, and inaccuracies that are actionable because the law applied to the facts is already well-established.

**Argument**

## I.    The Belairs Failed to Allege a Cognizable Inaccuracy under the FCRA

The Belairs failed to allege a cognizable inaccuracy under the FCRA, and failed to point out facts that could have been uncovered to show that the reported information was inaccurate. *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1220 (11th Cir. 2023).[1]

Instead, this matter arises from allegations of an unresolved legal dispute—not from an inaccuracy (legal or factual) in reporting. The Court should affirm. *See, e.g.*, *Hunt*, 770 F. App'x at 458 ("A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).") (quoting *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)); *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020) (plaintiff could not establish a § 1681s-2(b) violation where his claim was based on a contractual dispute as to whether the debt was owed).

---

[1] "To succeed on an FCRA claim, a plaintiff must establish (at least) two things." *Milgram*, 72 F.4th at 1218. "*First*, a plaintiff cannot recover on a § 1681s-2(b) claim without identifying inaccurate or incomplete information that the furnisher provided to the reporting agency." *Id.* (citing *Felts*, 893 F.3d at 1313). "And *second*, to prove an investigation was unreasonable, a plaintiff must point out some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete." *Milgram* 72 F.4th at 1218 (internal quotation omitted).

Instead of presenting a viable appeal based on the district court's actual holding and analysis, the Belairs utilize this appeal to advance policy and unduly expand the reach of the FCRA outside its text and structure. They frame the appeal as arising from a bright line ruling that certain types of inaccuracies are actionable, while others are not. (Initial Brief, 16). However, that is not the nature of the case. Moreover, they inaccurately contend that the district court drew a distinction between a legal inaccuracy and a factual inaccuracy. The court did not make this distinction.

The Belairs litigate a non-existent holding when arguing, "[n]othing in the statutory text contemplates a distinction between 'legal' inaccuracies and 'factual' inaccuracies, or between any other alleged 'categories of inaccuracies." (Opening Brief, p. 13). They want to litigate subsets of inaccuracies—but fail to see that the allegations in this case fall outside the category of "inaccuracy" completely. Here, there is no objective and readily verifiable inaccuracy at all. No patently inaccurate information was alleged. Instead, the allegations arise from subjective consumer allegations that require resolution by a court of law. As discussed later herein, the statute excludes from its purview the allegations raised by the Belairs. 15 U.S.C. § 1681s-2(a)(1)(A)(B)(D).

Because the Belairs failed to identify inaccurate information within the meaning of the statute, the court's grant of summary judgment was proper. The court's analysis and ruling aligns with both the text of the statute and the construing case law.

To be sure, the courts within this Circuit uniformly hold that the existence of a disputed legal question does not give rise to an FCRA claim under § 1681s-2(b). *Jackson v. Bank of Am., N.A.*, No. 2:19-cv-01940-RDP, 2022 WL 1493849, at *4 (N.D. Ala. May 11, 2022) ("In the FCRA context, a plaintiff must show a *factual* inaccuracy -- rather than the existence of a disputed legal question -- to prevail in a suit against a furnisher under § 1681s-2(b).")*; Kahalani v. Experian Info. Sols., Inc.*, No. 20-81018-CV, 2020 WL 13388260, at *3 (S.D. Fla. Dec. 29, 2020) (same); *Santessi v. Experian Info. Sols., Inc.*, No. 20-22689-CIV, 2020 WL 13401919, at *2–3 (S.D. Fla. Oct. 26, 2020) (same); *Wilson v. SunTrust Bank, Inc.*, 533 F. Supp. 3d 1363, 1369 (S.D. Ga. 2021) (furnishers are not obligated or qualified to resolve issues that can only be resolved by a court of law); *Baldeosingh v. TransUnion, LLC*, No. 8:20-cv-925-WFJ-JSS, 2021 WL 1215001, at *3 (M.D. Fla. March 31, 2021) ("A consumer fails to establish a factual inaccuracy  . . . by merely asserting a challenge to the legal validity of a reported debt.").

15

And, notably, there is no express conflict between this Court and other courts of appeal. *Compare Hunt*, 770 F. App'x at 458 ("A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).") *and Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (bankruptcy discharge absolved liability for debt and past due amounts; Experian reported factually incorrect information) *with Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023) ("The "inaccuracy" Mader alleges does not meet this statutory test because it evades objective verification. There is no bankruptcy order explicitly discharging this debt."); and *Chiang*, 595 F.3d at, 38 ("Like CRAs, furnishers are neither qualified nor obligated to resolve matters that turn[ ] on questions that can only be resolved by a court of law.") (internal quotation omitted); *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251-52 (9th Cir. 2022) ("The key to this case rests on the Arizona Anti-Deficiency Statute, which abolished Gross's liability for the debt that CitiMortgage reported . . . . It was 'patently incorrect' for CitiMortgage to report otherwise."); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023) (drawing distinction between unresolved legal disputes (like here) and instances where the status of the debt is objectively and readily verifiable).[2]

---

[2] Under *Sessa*, a claim of error that is legal in nature, and that is objectively and readily verifiable may be deemed an inaccuracy under the FCRA. In that objectively and readily verifiable context, a legal inaccuracy would also be, in fact, inaccurate.

16

The case law is harmonious and workable. The Belairs are wholly mistaken in suggesting *Hunt* is an outlier opinion that is not reconcilable with the statute's text or the case-specific majority view adopted by the courts at large. As set forth herein, a disputed legal issue that evades objective and ready verification does not constitute an inaccuracy under the FCRA. The fatal flaw to the Belairs' case is that this matter does not arise from an "inaccuracy" in credit reporting, legal or factual, that is cognizable under the FCRA.

### a.    The Fair Credit Reporting Act

The purpose of the FCRA "is to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "Commercial needs for consumer credit information" are balanced with a "consumers' rights to 'confidentiality, accuracy, relevancy, and proper utilization' of their credit information." *Hunt*, 770 Fed. Appx. at 453. Through amendments of the FCRA, Congress extended the Act to furnishers of consumer information. *Id*.[3]

---

A legal inaccuracy and a factual inaccuracy can both be inaccuracies. However, the same conclusion does not extend to an unresolved legal dispute that arises from the consumer's subjective (and flawed) allegations that are within the sole purview of a court of law. To hold otherwise would improperly eviscerate contractual terms outside the purview of the court of law and upend the balance of the FCRA.

[3] "'Furnishers,' . . . are people or organizations that give consumer information (furnish it) to those reporting agencies. . . . Furnishers can be creditors (banks, landlords, or anyone else) or third-party debt collectors." *Milgram*, 72 F.4th at 1217 (11th Cir. 2023).

Under the FCRA, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." § 1681s-2(a)(1)(A). Notably, "[f]or purposes of subparagraph (A), the term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, **other than solely allegations by the consumer**, that would cause a reasonable person to have substantial doubts about the accuracy of the information." § 1681s-2(a)(1)(D). (emphasis added).

Moreover, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if-- **(i)** the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and **(ii)** the information is, **in fact**, inaccurate." § 1681s-2(a)(1)(B) (emphasis added).[4]

After receiving notice of a dispute with regard to the accuracy of information from a consumer reporting agency, a furnisher must investigate the dispute, and verify, delete, or modify the information. *Felts*, 893 F.3d at 1312. Reasonableness is the touchstone of the investigation. *Hinkle*, 827 F.3d at 1302.

---

[4] The district court's analysis began with the statutory text of § 1681s-2(a)(1). (DE 54, p. 4). The Belairs are wrong in accusing the curt of violating the cardinal requirement of statutory interpretation or ignoring the statute's language.

18

Under the plain language of the statute, information reported to a consumer reporting agency must be factually true. *Erickson v. First Advantage Background Services Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). To that end, objectively incorrect information is "inaccurate" under the FCRA. Conversely, the language of the statute mandates the conclusion that unresolved legal disputes that are not objectively and readily verifiable, and those that arise solely from allegations by the consumer, do not qualify as inaccurate information within the meaning of § 1681s-2. *See, e.g.*, *Hunt*, 770 Fed. Appx. at 458 ("A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).").; *Bueno v. U. of Miami*, 22-22831-CIV, 2023 WL 3093614, at *3 (S.D. Fla. Apr. 26, 2023), *reconsideration denied,* 22-22831-CIV, 2023 WL 5037785 (S.D. Fla. Aug. 8, 2023) ("The Plaintiff fails to identify an actual, objective inaccuracy with his credit report to support his FCRA claim against the University.").

Thus, to establish a prima facie violation of the FCRA, a consumer as plaintiff must present evidence that tends to show that a credit reporting agency prepared a report containing "inaccurate" information. *Batterman*, 829 Fed. Appx. at 481 (citing *Cahlin v. General Motors Acceptance Corp*., 936 F. 2d 1151, 1156 (11th Cir. 1991)). If the plaintiff fails to satisfy this initial burden, he/she "as a matter of law, has not established a violation" of the FCRA. *Id. See also Milgram,* 72 F.4th at 1218

("First, a plaintiff cannot recover on a § 1681s-2(b) claim without identifying inaccurate or incomplete information that the furnisher provided to the reporting agency."). To obtain reversal of summary judgment in this case, the Belairs must show that their allegations amount to a cognizable inaccuracy. *Milgram,* 72 F.4th at 1220.

Moreover, "a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; i.e., that the furnisher would have discovered that the information it reported was inaccurate or incomplete . . . ." *Felts*, 893 F.3d at 1313 (emphasis in original). *See also Milgram*, 72 F.4th at 1221 (quoting *Felts*); *Hunt*, 770 Fed. Appx. at 457 (concluding that plaintiff failed "to state an FCRA claim because he cannot show that a reasonable investigation would have revealed that JPMC furnished inaccurate information to the CRAs.").

**b.    The Belairs Do Not Possess an Actionable Claim Under the FCRA**

The Belairs do not possess an actionable claim under the FCRA. They are wrong in conflating an unresolved legal dispute with an actionable inaccuracy. (Opening Brief, p. 18). In this appeal, they fail to acknowledge the express language of the statute, as well as the construing case law.

Under the statute, a furnisher may not furnish information to a CRA that is, in fact, inaccurate. § 1681s-2(a). Additionally, subjective allegations that arise solely from a consumer evade objective and reasonable verification. *Id. See also Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020) ("Only a court can fully and finally resolve the legal question of a loan's validity."). As a matter of law, the existence of a legal dispute as to a contract that has not been resolved by a court of law, and that is not objectively and readily verifiable, is not actionable under the FCRA. *Sessa*, 74 F.4th at 43 (construing *Mader*, 56 F.4th at 266) ("There was therefore a live legal dispute regarding whether *Mader* in fact still owed the student loan debt reported by the CRA. The Court found that the validity of that debt was not "objectively and readily verifiable[.]"); *see also Chiang*, 595 F.3d at 38; *Hunt*, 770 F. App'x at 458; *Batterman*, 829 F. App'x at 481; *Mader*, 56 F.4th at 269.

The Belairs overbroadly construe the statute in seeking to change the law. They improperly conflate the term inaccuracy (objective verification) with dispute (subjective allegation). In contending that a furnisher may be attacked with a FCRA claim for *any* dispute by a consumer (no matter how subjective, unresolved, or esoteric), they attempt to untether the statute's application from its express language, natural meaning, and purpose to ensure accuracy. They also attempt to turn the FCRA into a de facto proceeding to eliminate a contractual duty. This cannot be the right result.

21

Here, there is no dispute the Belairs stopped making payments. There is no dispute that they made well more than twelve payments on the loan and then stopped. There is no factual inaccuracy alleged by the Belairs. Instead, they argue that they rescinded the contract (after making several payments) and therefore the debt was not owed. HICV disagrees.

Notably, throughout the appeal, the Belairs fail to acknowledge the unresolved nature of the legal dispute. They also fail to acknowledge the express and qualified language in *Hunt*, as well as the language of the district court's opinion below, that is specific to the unresolved nature of the legal dispute. There has <u>not</u> been a final resolution on the validity of the Belairs' debt by a court of law.

The only right result is this: the Belairs' subjective interpretation of the timeshare contract does not give rise to a legitimate consumer dispute of inaccurate reporting. *See*, *e.g.*, *Batterman*, 829 Fed. Appx. at 481 ("The report of the liquidated damages is not a factual inaccuracy; rather, it is a contractual dispute. Such contractual disputes require resolution by a court of law, not a credit reporting agency. Batterman's claims are not that the Appellees reported any factually incorrect information in his credit report, but rather, that they failed to accept his interpretation that he lawfully terminated the lease due to its uninhabitability.").

22

If the Belairs truly believed they did not owe the debt, they should have instituted a declaratory action. They did not. The existence of a legal resolution and verification as to the invalidity of the debt is a necessary condition precedent to the viability of the Belairs' cause of action against HICV. *See Mader*, 56 F.4th at 271 (explaining that if "the bankruptcy court specifically determined that Mader's loan was discharged, or if it were settled as a matter of law that Navient's Excel Grad loans like the one that Mader carries are dischargeable, and a credit reporting agency continued to report such a loan as due and owing, that would present a very different case in terms of cognizability under the FCRA."). *Milgram, N.A.*, 72 F.4th at 1222 (Rosenbaum, J., concurring) ("The better route, in my view, is for Milgram to sue Chase for a declaration that she doesn't owe Chase money, that Milgram and Williams never had a principal-agent relationship, and that Chase didn't reasonably rely on automated payments. With that declaration in hand, Milgram (or any litigant) would have a much stronger cudgel with which to force a furnisher to stop reporting debt to a reporting agency.").

The Belairs overlook another key issue with the insufficiency of their claims. They failed to and cannot demonstrate that a reasonable investigation (if it did not occur) would have yielded a different result, *i.e.*, that HICV would have discovered that the information it reported was inaccurate or incomplete. Like *Hunt*, they "cannot demonstrate that a reasonable investigation would have uncovered an

inaccuracy in that information." *Hunt*, 770 Fed. Appx. at 458 (citing *Felts*, 893 F.3d at 1313). There was no dispute of material fact before the district court and summary judgment was proper.

To avoid this insurmountable downfall in their litigation strategy, the Belairs posit, as foregone conclusion, that they terminated their payment obligations. They contend that "the company erroneously reported that Plaintiffs owed thousands of dollars under a timeshare agreement that was terminated—pre-closing—in compliance with the terms of the very agreement that Holiday Inn Club drafted. Thus, plaintiffs have demonstrated actionably 'inaccuracies' [under the FCRA]." (Opening Brief, p. 17). The foregoing representation by the Belairs shines a spotlight on the flaw in their argument. The appeal is based on a false premise. There has been no court ruling that the Belairs terminated their payment obligations or eliminated the amount owed and past due. The Belairs may not seek reversal by claiming they did not owe amounts on the note where it was not proven below. For these reasons, the Court should affirm.

## II.    HICV Did Not Report Inaccurately; Any Reasonably Investigation Would Yield the Same Result

HICV did not report inaccurately. HICV conducted an investigation. (DE 32, ¶¶ 14, 15). There was no inaccuracy. The Belairs are wrong in their interpretation of the timeshare obligation. The operative agreement for the payment obligation is the note, not the purchase agreement. *See Felts*, 893 F.3d at 1314 ("Wells Fargo was required to furnish information to the CRAs regarding Felts' payment status and history for one agreement in particular: the Note Felts signed for the Loan."). The Court may and should affirm on this additional basis. *Id.* at 1311 (court may affirm for any grounds in the record).

In *Felts*, this Court concluded, "[r]egardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; i.e., that the furnisher would have discovered that the information it reported was inaccurate or incomplete." *Id*. at 1313.[5]

Here, any reasonable investigation would yield the same result.

---

[5] *See also* Hunt, 770 F. App'x at 458 (11th Cir. 2019) (same, quoting *Felts*); *Davidson v. Capital One*, N.A., No. 14-20478-CIV, 2014 WL 6682532, at *4 (S.D. Fla. Nov. 25, 2014) ("But to interpret the FCRA to create liability for the failure to conduct a reasonable investigation when the disputed information is accurate would do violence to the primary goal of the FCRA: to promote the accurate reporting of credit information to CRAs.").

The liquidate damages provision under the purchase agreement is inapplicable to the Belairs' payment obligation under the promissory note. Stated differently, a liquidated damages provision in the purchase agreement (a provision that is for the benefit if HICV), does not pertain to the Belairs' breach of the note, and does not permit them to escape their monetary obligations under the note. The Belairs did not breach the purchase agreement. They breached the note. (DE 37, p. 15).

The purchase agreement does not require monthly payments, as the purchase price was to be paid with the loan funds by the Belairs in connection with the note. The monetary note obligations may be enforced without regard to the purchase agreement. *Welch v. JG Worldwide, LLC*, CV 19-8- BU-BMM-JCL, 2019 WL 2807449, at *4 (D. Mont. June 7, 2019), report and recommendation adopted, CV-19-8- BU-BMM, 2019 WL 2775498 (D. Mont. July 2, 2019) ("The Promissory Note and Guaranty Agreement are enforceable contracts, and Plaintiffs are free to enforce their rights under those contracts without also seeking to enforce their rights under the Purchase Agreement."); *Williams v. Scores Enetrtainment, Inc.*, 96 CIV. 1283 (SAS), 1996 WL 601528, at *2 (S.D.N.Y. 1996) ("a promissory note stands on its own—the note alone establishes the plaintiff's right to payment.").

26

Moreover, HICV pointed out in the district court that a Florida state court analyzed a purchase agreement with essentially identical terms. (DE 37, p. 18) (citing *Holiday Inn Club Vacations, Inc. v. Granger*, 2018-CA-011778 (Fla. 9th Cir. Ct. Mar. 15, 2021). In deciding that HICV was entitled to a reservation of jurisdiction for a deficiency judgment after a mortgage foreclosure, the *Granger* court rejected the defendant's claim that the liquidated damages provision in the purchase agreement eliminated the payment obligations of the note. HICV elucidated for the district court that the *Granger* court ruled as follows:

> It is undisputed that the first three note installment payments – that is the "Note Payments" as that term is defined in the Purchase Agreement – were made. However, [HICV] did not immediately record the Mortgage and Deed, and Granger missed a payment a few days before Deed was recorded. In Granger's view, the parties were still in a "pre-closing" posture until recordation of the Deed so that any payment default, even after the first three installments, remained subject to paragraph 13. Concluding that every note installment payment is a condition of the Purchase Agreement runs counter to the express language and purpose of the Purchase Agreement … If the contracting parties intended for additional note payments to be a "term or condition of [the Purchase Agreement" subject to its liquidated damages provision, it makes little sense that the Purchase Agreement would, by its plain language, make only the first three payments a condition of closing under the Purchase Agreement, define those payments as the "Note Payments," and make no reference to later installment payments as being a term or condition of the Purchase Agreement, as distinguished from the Note and Mortgage.

27

(DE 37, p. 18).[6] The same logic applies here.

Paragraph 13 of the purchase agreement was not intended to create an escape hatch to the benefit of the Belairs, allowing them to unilaterally avoid their contractual obligations by defaulting under the note; nor, did paragraph 13 actually create such a right. (DE 32-1, p. 5). Instead, Paragraph 13 of the purchase agreement was clearly intended to protect HICV in the event that the Belairs committed some breach of the purchase contract itself—not the promissory note or any other agreement. Moreover, the Belairs are simply wrong in contending that HICV must record the deed for their note and mortgage to have binding effect. *Fryer v. Morgan*, 714 So. 2d 542, 545 (Fla. 3d DCA 1998) ("The law in Florida has always been that an unrecorded deed does not affect its validity as between the parties and their privies."). The Belairs' obligation under the note did not begin with recordation of the deed. A delay in recording (if one existed at all) did not affect the borrower's obligation under the note.

---

[6] In the lower court, HICV cited not only *Granger* as aligning with its legal interpretation but also another state court case, *Holiday Inn Club Vacations, Inc. v. Parker*, 2018-CA010461 at *2 (Fla. 9th Cir. Ct. Jan. 19, 2021). (DE 37, pp. 18-19).

### III.     The Court should reject the Consumer Financial Protection Bureau's and Federal Trade Commission's Arguments

The Consumer Financial Protection Bureau and Federal Trade Commission filed an amicus brief in this appeal. Their generalized brief leaves out case-specific analysis as to the allegations of this case and instead focuses on the broader motivation of expanding the FCRA. In doing so, it appears that they misunderstand the district court's ruling. They contend in their brief that "the district courts decisions at issue unduly narrow the scope of a furnisher's obligations by holding that furnishers need not investigate indirect disputes involving 'legal' inaccuracies." Brief of Amici Curiae, p. 2). Their choice of terminology in "legal inaccuracies" is important. This appeal does not come to the Court from a case involving "legal inaccuracies."

Again, there is no cognizable inaccuracy alleged. There is a plain distinction between a legal inaccuracy that is objectively and readily verifiable (and actionable) and a legal dispute that is unresolved by a court of law (and not actionable).

The Belairs' claim arises from an unresolved legal dispute that arises solely from consumer allegations that may only be resolved by a court of law. The court's ruling is not an incorrect or unduly narrow interpretation of the statute. It instead applies the case specific inquiry required for an FCRA claim.

Still, the CFPB and FTC raise the concern that the district court's holdings will limit consumer's ability to obtain correction of potentially harmful inaccuracies on their consumer reports and reduce the incentive to resolve 'legal disputes." (Brief, p. 2). They overlook, however, the outcome for which they advocate will disincentivize consumers to honor their debts, it will hamper the efficient extension of credit and disserve consumers, and it will inequitably eviscerate the intended balance of the FCRA. *Safeco Ins. Burr*, 551 U.S. at 52; *Hunt*, 770 Fed. Appx. at 453. Given the undisputed payment default by the Belairs, HICV's credit reporting serves a proper purpose and promotes efficiency in banking.

Noticeably, the CFPB and the FTC, with their choice of qualified language, appear to recognize in their amicus brief that the Belairs' attempted rescission is still a disputed legal issue that may not have been effective. (*See*, *e.g.*, Brief, at p. 7) ("[] the Belairs hired a lawyer who sent letters to HICV, in February 2018 and April 2019, challenging the validity of and attempting to rescind, the timeshare agreement. HICV did not agree to the rescission and recorded the deed . . . ."). And, they recognize that reasonable procedures govern the determination of accuracy. (*Id.* at p. 12) ("What constitutes a 'reasonable' investigation is case specific, and the investigation must be 'reasonable' under the circumstances.").

In raising the foregoing points, however, the CFPB and FTC fail to recognize that the district court in this case, and the existing body of law, do not per se preclude cases predicated on objective and readily verifiable inaccuracies. And, the district court here did not categorically exempt "legal issues" from the purview of a factual inaccuracy. Instead, the disputed issue in this case is unresolved and may only be resolved by a court of law. It is not an inaccuracy. (DE 54, pp. 5-9); *See, e.g.*, *Batterman*, 829 Fed. Appx. at 481 ("The report of the liquidated damages is not a factual inaccuracy; rather, it is a contractual dispute. Such contractual disputes require resolution by a court of law, not a credit reporting agency."); *Chiang,* 595 at 29–30 (1st Cir. 2010) (We further hold that a § 1681s–2(b) claim requires plaintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover."); *Losch*, 995 F.3d at 946 ("[T]here is no doubt that Losch's mortgage was discharged. Thus, this case doesn't involve a legal dispute about the validity of the underlying."); *Mader*, 56 F.4th at 271 (explaining in the event of bankruptcy discharge "or if it were settled as a matter of law that Navient's Excel Grad loans like the one that Mader carries are dischargeable, and a credit reporting agency continued to report such a loan as due and owing, that would present a very different case in terms of cognizability under the FCRA."); *Gross*, 33 F.4th at 1251 (anti-deficiency law barred liability for debt).

Moreover, the amici are wrong to the extent they suggest that the term "accuracy" includes an unresolved legal dispute that is brought about by allegations solely made by a consumer, and which are not factually incorrect. The language of section 1681s-2(a)(1)(A)(B)(D) collectively excludes a consumer's subjective theories of contractual interpretation from its purview of accuracy.

And this case is not *Gross*. There, unlike here, "the key to th[e] case rest[ed] on the Arizona Anti-Deficiency Statute, which abolished Gross's liability for the debt that CitiMortgage reported . . . . It was 'patently incorrect' for CitiMortgage to report otherwise.") 33 F.4th at 1251-52. The Belairs did not allege patently incorrect information. And, this case is not *Sessa*. Here, unlike *Sessa*, there exists an unresolved legal dispute, arising solely from subjective allegations, that that can only be provided by a court of law—and for which state courts have sided with HICV. While the law applied to the facts may result in a cognizable factual inaccuracy in certain instances, that is not the case here.

In sum, the governing law is not unworkable. The courts are plainly capable of weeding out factual inaccuracies, disputed legal issues that should be resolved by a court of law, and inaccuracies that are actionable because the law applied to the facts is already well-established. This appeal serves as a prime example of that.

The Belairs' alleged "inaccuracies" are not inaccuracies at all. There is no viable cause of action because their allegations instead amount to an unresolved legal dispute, that arises solely from their subjective and mistaken interpretation of contractual documents.

The Court should not upend the existing law. The law necessarily draws a distinction between factual inaccuracies, objectively verifiable legal inaccuracies, and unresolved legal disputes that may only be resolved by a court of law. The relevant inquiry in FCRA cases should continue to be case specific. The standard is not unworkable or difficult. The Court should decline to expand the FCRA in a way that will be unduly advantageous to a subset of consumers that admittedly stop paying their debts, to the disadvantage of consumers in the long run, and to the obvious detriment of creditors and furnishers of credit information. *Cahlin*, 936 F.2d at 1158 ("[T]he very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer.").

And again, the district court's ruling at issue does not serve as a categoric bar to FCRA claims predicated on legal issues that result in factual inaccuracies in reporting. The district court conducted a case specific inquiry and correctly ruled the Belairs' FCRA claim fails. HICV is entitled to judgment as a matter of law.

**Conclusion**

Disputed and undecided legal questions that are within the purview of a court of law, and that are not objectively and readily verifiable, do not qualify as inaccuracies in credit reporting under the FCRA. Summary judgment in this case was proper. In seeking reversal, the Belairs, and their amici, espouse an inequitable, unworkable, and damaging standard that asks the Court to unduly expand the scope of the FCRA outside its ordinary meaning and to greenlight all consumer claims even if they are based on subjective and unproven allegations. This is not the law. The Court should affirm.

RESPECTFULLY submitted on this day, August 14, 2023.

BITMAN, O'BRIEN & MORAT, PLLC

/s/ Allison Morat
Allison Morat, Esquire
Florida Bar No.: 99453
amorat@bitman-law.com
krahberg@bitman-law.com
615 Crescent Executive Ct., Suite 212
Lake Mary, FL 32746
Telephone: (407) 815-3110
*Counsel for Appellee*

34

**Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8,205 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman, 14 Point font.

<div align="right">

By: /s/ Allison Morat
     Allison Morat

</div>

**Certificate of Service**

I HEREBY CERTIFY that, on August 14, 2023, I electronically filed the foregoing Answer Brief with the Clerk of Court of the United States Court of Appeals for the Eleventh Circuit using CM/ECF. All parties and counsel of record will be served via transmission Notices of Electronic Filing generated by CM/ECF.

<div style="margin-left: 40%;">

BITMAN, O'BRIEN & MORAT, PLLC

/s/ Allison Morat
Allison Morat, Esquire
Florida Bar No.: 99453
amorat@bitman-law.com
krahberg@bitman-law.com
615 Crescent Executive Ct., Suite 212
Lake Mary, FL 32746
Telephone: (407) 815-3110
*Counsel for Appellee*

</div>